Emmanuel McCRAINEY, Respondent,

v.

KANSAS CITY MISSOURI SCHOOL DISTRICT, et al., Appellants.

No. WD 72387.

Missouri Court of Appeals, Western District.

March 29, 2011.

748

Sarah Baltzell, for Appellants.

Amy K. Maloney, for Respondent.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

The Kansas City, Missouri School District ("the School District") and Anthony Amato [1] appeal the trial court's judgment granting a new trial limited to the issue of the amount of punitive damages on Emmanuel McCrainey's retaliation claim. On appeal, the School District contends that the trial court erred in granting a new trial on the amount of punitive damages because the Missouri Human Rights Act ("MHRA") does not authorize an award of punitive damages against a governmental entity and because a new trial on solely that issue would result in an arbitrary award of punitive damages. The School District further claims that a new trial should have been granted on the issue of liability because McCrainey did not engage in protected activity under the MHRA and because the trial court allowed McCrainey to submit an erroneous jury instruction. We affirm the judgment of the trial court and sustain McCrainey's motion for an award of attorneys' fees on appeal, remanding to the trial court for the purpose of determining the reasonable amount of the award.

## Factual and Procedural Background

On May 15, 2008, Emmanuel McCrainey filed a petition for damages against the School District and Anthony Amato claim-

1. Because one brief was filed on behalf of the appellants, we will refer to them collectively as "the School District" when addressing their arguments on appeal.

ing that he had been subjected to unlawful retaliation for complaining about statements made by Amato that McCrainey believed constituted sexual harassment and showed gender bias. The jury returned a verdict in favor of McCrainey, awarding him compensatory and punitive damages. The School District filed a motion for a new trial on all issues, and the trial court granted a new trial solely on the issue of the amount of punitive damages.

McCrainey was employed by the School District when Amato became the Superintendent of Schools. McCrainey was working in the admissions office when Amato decided to hire him to serve as his chief of staff. McCrainey alleges that while he was working for Amato, he heard Amato use the term "bitch" to describe two female school board members.[2] According to McCrainey, there were two female employees present when Amato made the statement, and one of them told Amato that he should not be saying that word. McCrainey was concerned about the use of such language in the workplace and informed an employee in human resources about the incident. McCrainey also spoke directly to Amato and told him that he should not use that type of offensive language in the workplace.

Following his complaint, McCrainey began experiencing negative treatment from Amato and other administrators. Amato stopped speaking to him, and McCrainey was excluded from meetings and recommended for a demotion. McCrainey's office was moved multiple times without warning. McCrainey eventually resigned from his employment with the School District and thereafter filed a claim of retaliation against the School District and Amato. In his petition, McCrainey alleged that Amato made derogatory, gender-based comments, such as repeatedly referring to female school board members as "bitches." McCrainey alleged that he complained about the language, but the School District refused to take appropriate action, and Amato retaliated against him. Finally, McCrainey alleged that his good faith complaints regarding sexual harassment and gender bias constituted protected activity and that his complaints were a contributing factor in the retaliatory treatment.

Following a trial on McCrainey's claim, the jury returned a verdict in his favor against the School District and against Amato individually. The jury assessed $16,000 in compensatory damages against each defendant and found that both defendants were liable for punitive damages. At McCrainey's request, the trial was bifurcated and in the second phase of the trial, the jury determined the amount of punitive damages McCrainey would be awarded. During the second phase, McCrainey's attorney referred to a five million dollar reserve of the School District as "basically an insurance policy." After hearing the evidence, the jury assessed $250,000 in punitive damages against the School District and $80,000 in punitive damages against Amato.

The School District and Amato filed a joint motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. They asked for a new trial on all issues. On April 13, 2010, the trial court issued its judgment vacating the punitive damages awards and ordering a new trial as to punitive damages where McCrainey's attorney purposefully injected the insurance issue during the second phase of the trial. The trial court further ordered that the jury's verdict regarding the amount of compensatory damages and

---

**2.** McCrainey also claims that he heard Amato use the word "pussy" to refer to a male administrator, but the School District does not address this incident in its argument.

the defendants' liability for punitive damages would remain intact. The trial court overruled the School District's motion as to all other issues. This appeal by the School District and Amato followed.

## Standard of Review

■■■ Pursuant to Rule 78.01, a trial court may grant a new trial on all or part of the issues after a trial by jury. Appellate courts are more liberal in upholding a trial court's grant of a motion for new trial than a denial of such a motion. *Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n*, 192 S.W.3d 461, 469 (Mo.App. W.D.2006). Therefore, in reviewing a grant of a new trial, we must " 'indulge every reasonable inference in favor of the trial court and may not reverse unless there has been a clear abuse of discretion.' " *Pasalich v. Swanson*, 89 S.W.3d 555, 559 (Mo.App. W.D.2002) (quoting *McCormick v. St. Louis Univ., Inc.*, 14 S.W.3d 601, 605 (Mo.App. E.D.1999)). A trial court has abused its discretion when its " 'ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (quoting *Anglim v. Mo. Pac. R.R.*, 832 S.W.2d 298, 303 (Mo. banc 1992)). However, as to questions of law our review is *de novo. See Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 561 (Mo.App. W.D.1999).

## Discussion

Before reaching the merits of the School District's appeal, we must address McCrainey's motion to dismiss the appeal for lack of jurisdiction. In his motion, McCrainey argues that the School District did not provide sufficient notice that it was appealing from the trial court's order granting a new trial. McCrainey further argues that even if the School District is properly appealing from the grant of a new trial, it can only raise issues regarding the grounds for granting the new trial on punitive damages and cannot make arguments regarding any underlying liability issues.

■■■ Section 512.020(1), RSMo Cum. Supp.2010, authorizes an appeal by an aggrieved party from an order granting a new trial. According to Rule 81.08(a), the notice of appeal must specify the judgment or order the party is appealing from. McCrainey contends that the School District did not specify in its notice of appeal that it was appealing from the trial court's order granting a new trial. However, where a notice of appeal can reasonably be construed as a good faith attempt to appeal from an appealable order, it will be deemed sufficient. *Wills v. Whitlock,* 139 S.W.3d 643, 658 (Mo.App. W.D.2004). Furthermore, "[t]echnical adherence to the formal averments of a notice of appeal is not jurisdictional, and the averments are to be liberally construed to permit appellate review so long as the opposing party is not misled to his or her irreparable harm." *L.J.B. v. L.W.B.*, 908 S.W.2d 349, 351 (Mo. banc 1995).

In *Wills*, this court found that where the appealing party's notice of appeal did not expressly refer to a certain order of the trial court, but the party had attached a copy of the order to its notice of appeal, the party had sufficiently complied with Rule 81.08(a). *See Wills*, 139 S.W.3d at 658. In this case, the School District attached both the original judgment and the trial court's order granting a new trial to its notice of appeal. Additionally, prior to McCrainey filing his motion to dismiss, one of the attorneys for the School District informed McCrainey's attorney that the School District believed it had appealable issues, "including the new trial issue." Therefore, McCrainey was on notice that the new trial order was being appealed,

and the School District sufficiently complied with Rule 81.08(a).

◼ McCrainey further contends that in the event the School District has properly appealed from the grant of a new trial, it may only make arguments regarding the order itself and may not address underlying liability issues at this time. In support of his argument, McCrainey cites to only one case. *See Brown v. Lanrich, Inc.*, 950 S.W.2d 235 (Mo.App. E.D.1997). In that case, the court found that where the trial court had ordered a new trial on the issue of damages only, the defendant could not yet appeal issues of liability. *Id.* at 237. Therefore, the court declined to review all allegations of error relating to liability issues. *Id.* at 238. However, the court in *Brown* cited no authority supporting its decision, and furthermore, its decision contradicts older Missouri case law that has not been overruled. *See, e.g., Stith v. St. Louis Pub. Serv. Co.*, 363 Mo. 442, 251 S.W.2d 693, 695–96 (1952) (reviewing the submissibility of the plaintiff's case and an issue regarding instructional error where the defendant appealed from a partial grant of a new trial on the issue of damages only); *Nelson v. Kansas City*, 360 Mo. 143, 227 S.W.2d 672, 674 (Mo. banc 1950) (reviewing issues of liability where the trial court granted a new trial on damages only because affirming the trial court's order would subject the parties to the futile effort of another trial and possible appeal when no liability existed).

If, as the School District argues, no liability exists, it would be illogical to hold a retrial on the issue of punitive damages. It would almost certainly result in another appeal and possibly a third trial. McCrainey's motion to dismiss the appeal for lack of jurisdiction is denied, and we will review the School District's allegations of error regarding its liability, as well as issues related to the trial court's grant of a new trial on punitive damages.

◼ In its first point on appeal, the School District contends that the trial court erred in allowing the submission of the punitive damages issue because the MHRA does not authorize an award of punitive damages against a governmental entity. As the School District notes in its brief, this issue was argued before the Missouri Supreme Court in *Howard v. City of Kansas City*, 332 S.W.3d 772 (Mo. banc 2011). *Howard* was decided during the pendency of this case, and the Court held that punitive damages are available against governmental entities under the MHRA. *Id.* at 787–88. Therefore, the trial court did not err in allowing the submission of the issue of punitive damages, and the School District's first point is denied.

In its second point on appeal, the School District essentially claims that McCrainey did not make a submissible case of retaliation because he did not prove that he engaged in a protected activity under the MHRA. The School District contends that McCrainey did not oppose unlawful discrimination because the alleged discrimination was against school board members, who are not employees of the School District. McCrainey does not challenge the assertion that school board members are not employees of the School District. He instead contends that based on federal case law, he need not prove that the underlying conduct was in fact unlawful discrimination; rather, he need only show that he had a good faith, reasonable belief that the conduct violated the law. The School District argues that the federal cases McCrainey relies on address only Title VII and that Missouri courts do not apply a "good faith" test in MHRA retaliation cases.

◼ Section 213.070(2), RSMo 2000, makes it an unlawful discriminatory prac-

tice to "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter." To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove that: (1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action. *See Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 245 (Mo.App. E.D. 2006).[3] Federal cases addressing Title VII claims have stated that retaliation claims are not based upon prohibited discrimination, but instead upon an employer's adverse action against an employee who complains of discrimination. *See, e.g., Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir.2006). "In general, as long as a plaintiff had a reasonable, good faith belief that there were grounds for a claim of discrimination or harassment, the success or failure of a retaliation claim is analytically divorced from the merits of the underlying discrimination or harassment claim." *Id.*; *see also Buettner*, 216 F.3d at 714 (stating that a finding of unlawful retaliation "is not conditioned on the merits of the underlying discrimination complaint").

Although the School District contends that no Missouri court has applied the good faith principle in an MHRA case, a recent Missouri case indicates that a retaliation claim under the MHRA is not conditioned on the success of the underlying discrimination or harassment claim. *See Barekman v. City of Republic*, 232 S.W.3d 675 (Mo.App. S.D.2007). In that case, an employee filed suit against his former em-

ployer alleging that he had been sexually harassed and that his employer had retaliated against him for complaining about the sexual harassment. *Id.* at 679. As to the employee's sexual harassment claim, the court found that while the conduct that occurred in the workplace "may have been boorish, vulgar and inappropriate, it [did] not constitute gender discrimination under the MHRA." *Id.* at 681. As to the employee's retaliation claim, the court found that sexual harassment is a practice prohibited by the MHRA and that the employee had presented sufficient evidence to prove that he had complained to his employer about being the victim of sexual harassment. *Id.* at 681–82. Therefore, the court found that summary judgment as to the retaliation claim was inappropriate and remanded the case for further proceedings. *Id.* at 682.

*Barekman* demonstrates that a plaintiff can oppose a practice which is not actually unlawful under the MHRA, yet still proceed with a retaliation claim based on his or her opposition to that practice. Although the court in *Barekman* did not discuss whether the plaintiff had a good faith, reasonable belief that the conduct he opposed was prohibited by the MHRA, the imposition of such a requirement advances two interests. First, it will prevent plaintiffs from prevailing on retaliation claims that are entirely frivolous, and second, requiring only that the plaintiff have a good faith, reasonable belief that prohibited conduct occurred is consistent with the purposes of the MHRA's retaliation provisions. By providing a retaliation cause of action, section 213.070 of the MHRA encourages employees to report and oppose

---

**3.** To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between the protected activity and the adverse employment action. *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713–14 (8th Cir.2000). The court in *Buettner* noted that the same standards apply to MHRA retaliation claims. *Id.* at 714.

potentially discriminatory conduct. If an employee were required to be certain that the conduct was unlawful before making a report, an unsure employee will be less likely to oppose conduct that may in fact be prohibited under the MHRA. Therefore, we conclude that a plaintiff need only have a good faith, reasonable belief that the conduct he or she opposed was prohibited by the MHRA in order to prevail on a retaliation claim.

 Furthermore, we find that there was sufficient evidence to prove that McCrainey had a good faith, reasonable belief that Amato's use of the word "bitch" in the workplace to describe female board members violated the law. The School District's sole argument is that McCrainey could not have reasonably believed that Amato's conduct was unlawful because the school board members to whom he was referring were not employees of the School District, and McCrainey admitted that they were not employees. However, McCrainey testified that he was concerned about the language Amato was using in the workplace and that subordinate female employees of the School District were present and heard Amato referring to other women as "bitches." Additionally, there was evidence presented at trial showing that the School District's anti-discrimination and anti-harassment policy prohibits "derogatory names, innuendos or other negative or derogatory remarks relating to . . . sex." An employee from the School District's human resources department and the school board president both testified that Amato's conduct would have violated the policy. While a violation of an employer's policy may not constitute a violation of the MHRA, it would not be unrea-

sonable under the circumstances of this case for McCrainey to believe that Amato's conduct was unlawful. Therefore, McCrainey made a submissible case of retaliation where there was sufficient evidence to show that he made a good faith complaint about conduct which he reasonably believed to constitute discrimination or harassment. The School District's second point is denied.

 In its third point on appeal, the School District contends that the trial court erred in allowing McCrainey to submit Instructions 7 and 12 regarding his retaliation claims against the School District and Amato. The School District claims that the instructions were erroneous in that they allowed the jury to find in McCrainey's favor without making a finding that McCrainey engaged in protected activity by confronting unlawful discrimination.[4] At the instruction conference, counsel for the School District lodged the following objection against the submission of Instruction 7:

> We do object to this instruction. We believe it is improper under the M.A.I. It is confusing for the jury. Not clear and concise and actually sets forth factual propositions that from the instructions looks like we are submitting factual proposition[s] as true for the jury and we would object and instead offer Defendant's proposed 31.24.

Counsel made the same objection to Instruction 12.

 To preserve an instructional error, counsel must make specific objections to allegedly erroneous instructions, and a party may not assign error to the submission of an instruction "unless that

---

4. The portion of Instructions 7 and 12 which the School District objects to required the jury to find that "plaintiff's complaint in January 2007 of Amato's statements was a con-

tributing factor" in the given list of retaliatory actions in the preceding paragraph of the jury instruction.

party objects thereto ... stating distinctly the matter objected to and the grounds of the objection." Rule 70.03. "The trial court has no obligation to ferret out specificity, which a party chooses not to distinctly articulate in its objection, in order to make an informed ruling on a general objection." *Sparkman v. Columbia Mut. Ins. Co.*, 271 S.W.3d 619, 625 (Mo.App. S.D.2008). Therefore, a vague, general objection preserves nothing for appellate review. *Id.* The School District's objection vaguely asserts that the instructions do not comply with M.A.I. without stating how they are deficient. Nowhere in its objection did the School District specify that the instructions were improper in that they did not require the jury to find that McCrainey opposed unlawful discrimination. Where the School District did not put this argument before the trial court, it has not preserved its objection for review.

■ The School District has requested that we review its claim under the plain error standard. "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). We will reverse for plain error in a civil case only where " 'the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.' " *Atkinson v. Corson*, 289 S.W.3d 269, 276–77 (Mo.App. W.D.2009) (quoting *Flood ex rel. Oakley v. Holzwarth*, 182 S.W.3d 673, 680 (Mo.App. S.D. 2005)). For an instructional error to rise to the level of plain error, the trial court must have " 'so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict.' " *Id.* at 277 (quoting *Hensley v.*

*Jackson Cnty.*, 227 S.W.3d 491, 497–98 (Mo. banc 2007)).

Based on our analysis of the School District's second point on appeal, the jury was not required to make a finding that the practice McCrainey opposed was actually unlawful under the MHRA. Furthermore, there was sufficient evidence from which the jury could believe that McCrainey had a good faith belief that Amato's conduct was unlawful. There is no reason to believe that the jury's verdict would have been different if it had been instructed otherwise. Therefore, the submission of Instructions 7 and 12 did not so prejudice the School District that a manifest injustice or miscarriage of justice occurred. The School District's third point is denied.

■ In its final point on appeal, the School District contends that the trial court abused its discretion in limiting the new trial solely to the issue of the amount of punitive damages. The School District contends that this will result in an arbitrary award of punitive damages unrelated to the underlying conduct. The School District relies on *Ackmann v. Keeney–Toelle Real Estate Co.*, 401 S.W.2d 483 (Mo. banc 1966) and several similar cases for the proposition that a new trial must be on all issues rather than solely on the amount of punitive damages because a jury cannot properly determine the amount of punitive damages without hearing evidence on all issues. *See id.* at 490. However, the Missouri Supreme Court has since found that a new trial may be ordered on the issue of punitive damages alone and that any prior cases holding otherwise, including *Ackmann*, should no longer be followed. *See Burnett v. Griffith*, 769 S.W.2d 780, 791 (Mo. banc 1989). The Court noted in *Burnett* that the mere fact that a new trial on damages would require the utilization of some evidence regarding liability or the degree of culpa-

bility is not a sufficient reason to require a new trial on all issues. *Id.* The Court further stated that where there was no error in the jury's finding of liability, the plaintiff should not have to risk his verdict where the only remaining issue was with regard to punitive damages. *See id.* Finally, the Court observed that trial courts are "capable of determining what evidence from the prior trial is necessary to support a verdict on resubmission of the single issue of punitive damages." *Id.*

Similarly, we have found no error in the jury's underlying verdict regarding the School District's liability. While the School District assumes that a retrial on the amount of punitive damages will not take into account any prior evidence, the trial court has the ability to determine what evidence will be necessary on a retrial of the punitive damages issue. The trial court did not abuse its discretion in ordering a new trial solely on the issue of the amount of punitive damages where there was no error in the jury's finding of liability. The School District's final point is denied.

 Prior to oral argument, McCrainey filed a motion for attorneys' fees on appeal in the amount of $47,887, and the motion was taken with the case. Section 213.111.2 allows a court to award reasonable attorneys' fees to a prevailing plaintiff in an MHRA case. Where a plaintiff has prevailed in an action under the MHRA, "the court should award attorneys' fees 'unless special circumstances would render such an award unjust.'" *Williams v. Trans States Airlines, Inc.,* 281 S.W.3d 854, 878–79 (Mo.App. E.D.

2009) (quoting *Brady v. Curators of Univ. of Mo.,* 213 S.W.3d 101, 115 (Mo.App. E.D.2006)).[5] Thus, we grant McCrainey's motion for attorneys' fees on appeal. Although this court has "the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 648 (Mo.App. W.D.2002). Therefore, we remand to the trial court for the purpose of conducting a hearing to determine the reasonableness of the attorneys' fees requested on appeal.

## Conclusion

The judgment of the trial court is affirmed. McCrainey's motion for attorneys' fees on appeal is sustained, and we remand to the trial court for further proceedings consistent with this opinion.

All concur.

---

**5.** The School District appears to argue in its motion in opposition that an award of appellate attorneys' fees would be unjust because appellate fees were only incurred as a result of McCrainey's injection of the insurance argument in the punitive damages phase of the trial. However, as the facts of this case clearly demonstrate, the School District appealed several issues that were unrelated to the result of the punitive damages phase of the trial because it believed it could not be held liable for retaliation under the MHRA. Therefore, an award of attorneys' fees is not unjust on the basis asserted by the School District.