

# SUPREME COURT OF MISSOURI
## en banc

LI LIN, )           *Opinion issued January 14, 2020*
)
        Respondent, )
)
v. )           No. SC97641
)
MATTHEW J. ELLIS, DEFENDANT, AND )
THE WASHINGTON UNIVERSITY )
 IN SAINT LOUIS, )

        Appellant.

### APPEAL FROM THE CIRCUIT COURT OF SAINT LOUIS CITY
The Honorable Christopher Edward McGraugh, Judge

PER CURIAM

Dr. Li Lin filed suit against Washington University ("the University") and Dr. Matthew Ellis for retaliation pursuant to section 213.070[1] of the Missouri Human Rights Act ("MHRA"), claiming her request for a reasonable accommodation of her herniated discs was a protected activity. A jury returned a verdict in Dr. Lin's favor against the University but relieved Dr. Ellis of any liability. The University appeals, raising five claims of error. This Court finds the University's first point alleging the circuit court erred

---

[1] All statutory references are to RSMo 2000, unless otherwise indicated. Several MHRA provisions were amended effective August 2017; however, those amendments are not applicable to Dr. Lin's claim.

in denying the University judgment notwithstanding the verdict ("JNOV") because Dr. Lin failed to submit a cognizable claim under the MHRA is dispositive. This Court holds merely requesting an accommodation is insufficient to support a claim of retaliation under the plain language of the MHRA because such a request, standing alone, does not constitute opposition to a practice prohibited by the MHRA, nor does it constitute the filing of a complaint, testifying, assisting, or participating in any investigation, proceeding or hearing conducted under the MHRA. The circuit court's judgment is reversed, and the case is remanded.[2]

## Factual and Procedural History

Dr. Lin was employed by the University's school of medicine as a staff scientist from 1996 until 2012. Dr. Lin held numerous positions working in various laboratories, each supervised by a different lead researcher. Each time Dr. Lin's position was eliminated due to funding restraints or supervisory departures, Dr. Lin timely secured a new position with a different University laboratory.

In 2004, Dr. Lin began research work on a breast cancer project supervised by Dr. Ellis. Dr. Lin worked in Dr. Ellis' laboratory until her termination in 2012. Dr. Lin performed cell or tissue culture work, which required her to work under a hood to ensure the cultures remained in a sterile environment. During this time, Dr. Lin began experiencing chronic back pain and was diagnosed with two herniated discs. Dr. Lin

---

[2] This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10.

informed Dr. Ellis of her diagnosis and requested accommodation to avoid tasks that aggravated her condition. Dr. Ellis provided the requested accommodation.

In 2010, Dr. Lin trained to perform microarray work pursuant to grant funding ("the R01 Grant"). In 2011, Dr. Lin's back pain worsened, and she requested to be excused from performing certain laboratory tasks requiring her to work at a bench with her back bent for extended periods of time. Dr. Ellis accommodated this request and assigned Dr. Lin to perform microarray work for the R01 Grant, which did not exacerbate her herniated discs.

In mid-2012, Dr. Lin had a disagreement with a colleague, which resulted in a complaint being filed against her. Dr. Ellis forwarded this complaint to a University research administrator and asked human resources to initiate a process "with a view to terminating" Dr. Lin's position. At this same time, Dr. Ellis was informed funding for the microarray work under the R01 Grant was set to expire in December 2012, which could eliminate funding for Dr. Lin's position.

In July 2012, Dr. Ellis informed Dr. Lin funding for her microarray work on the R01 Grant was expiring at the end of the year, and they discussed other work she could perform given her back restrictions. During this meeting, Dr. Ellis told Dr. Lin:

> I don't feel there's anyone else in my lab that if I asked them do something that they would say they couldn't because of the physical limitation. Everybody would say yes and go and do it except you. And I'm sympathetic because I'm a physician advising you and you have physical disability that prevents you from doing something that's pretty routine in a lab in the university that is focused on cancer biology.

Dr. Lin then met with Dr. Ellis, the University research administrator, and a human resources representative. At the meeting, they discussed Dr. Lin's back condition, work

3

restrictions, and the R01 Grant funding issues. The human resources representative requested Dr. Lin provide a physician's statement regarding her back condition and the need for accommodations, which Dr. Lin submitted. The physician's statement indicated Dr. Lin was to avoid work "including, but not limited to, cell culture and excessive bench work" to prevent reinjuring and exacerbating her herniated discs.

On August 10, 2012, Dr. Ellis formally notified Dr. Lin her position would be eliminated, and the University research administrator drafted a letter confirming her termination in November 2012 once funding on the R01 Grant concluded. The letter informed Dr. Lin she was eligible to transfer to another position at the University for which she was qualified. Dr. Ellis offered to provide Dr. Lin a letter of reference and attempted to find work in another University laboratory that would accommodate her back restrictions. Dr. Lin applied for multiple positions with different laboratories within the University, but she was not interviewed or offered any position. Dr. Lin's employment was terminated November 30, 2012.

On February 20, 2013, Dr. Lin filed a charge of discrimination with the Missouri Commission on Human Rights, alleging Dr. Ellis and the University discriminated against her based on her race, national origin, and disability. Dr. Lin further alleged the University and Dr. Ellis retaliated against her by discharging her and preventing her from transferring to a new position at the University because she engaged in a protected activity under the Americans with Disabilities Act ("ADA") by requesting a reasonable accommodation. The commission issued Dr. Lin a right-to-sue letter.

On August 7, 2014, Dr. Lin filed a petition in circuit court asserting claims of disability discrimination and retaliatory discharge against the University and Dr. Ellis. Dr. Lin later voluntarily dismissed her disability discrimination claim and filed a second amended petition. In the amended petition, Dr. Lin alleged she qualified as a person with a disability under the MHRA and requested Dr. Ellis and the University to provide her a reasonable accommodation for her disability. Dr. Lin alleged her disability and efforts to seek reasonable accommodation contributed to the decision to terminate her and not provide her with employment with the University after the R01 Grant funding expired.

The jury returned a verdict in Dr. Lin's favor against the University but relieved Dr. Ellis of all liability. The University filed a motion for JNOV alleging the sole claim submitted to the jury failed to state a cognizable cause of action under the MHRA because a request for an accommodation is not a protected activity under section 213.070 and, as a matter of law, cannot serve as a basis for a retaliation claim. The circuit court overruled the University's motion. The University appeals.

**Standard of Review**

"The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015) (quoting *All Am. Painting, LLC v. Fin. Sols. & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010)). When reviewing the overruling of a JNOV motion, "[t]his Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Barron v. Abbott Labs., Inc.*, 529 S.W.3d 795, 799 (Mo. banc

5

2017) (quoting *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010)). This Court reviews the evidence in the light most favorable to the jury's verdict. *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 12 (Mo. banc 2012).

To resolve whether Dr. Lin made a submissible case, this Court must interpret section 213.070 to determine whether a request for an accommodation can support a retaliation claim. "Statutory interpretation is a question of law, which is subject to *de novo* review on appeal." *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 163 (Mo. banc 2012). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Howard v. City of Kan. City*, 332 S.W.3d 772, 779 (Mo. banc 2011) (quoting *Farmers' & Laborers' Co-op Ins. Ass'n v. Dir. of Revenue*, 742 S.W.2d 141, 145 (Mo. banc 1987)). "This Court will not add words to a statute under the auspice of statutory construction." *Macon Cty. Emergency Servs. Bd. v. Macon Cty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016).

### Analysis

The University argues the circuit court erred in overruling its JNOV motion on the ground Dr. Lin failed to submit a cognizable claim because the MHRA's plain language does not authorize a claim of retaliation for merely requesting a disability accommodation. The University contends Dr. Lin's request for a reasonable accommodation for her herniated discs was not a protected activity on which a retaliation claim could be based because the request does not constitute opposition to an unlawful discriminatory practice nor participation in proceedings authorized by the MHRA. Dr. Lin contends federal

6

caselaw interpreting the ADA supports a finding that merely making an accommodation request is a protected activity sufficient to support a retaliation claim.

Whether an accommodation request is a protected activity under the MHRA is an issue of first impression in Missouri. "In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007) (*abrogated on other grounds by* section 213.101.4, RSMo Supp. 2018). While the MHRA and ADA are coextensive, "the protections provided by federal statutes like the … ADA are not identical to those provided by the MHRA." *Wells v. Lester E. Cox Med. Ctrs.*, 379 S.W.3d 919, 925 (Mo. App. 2012). "If the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding." *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 113 (Mo. App. 2006).

> Section 213.070.1(2) provides:
>
> It shall be an unlawful discriminatory practice for an employer … [t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter.

Dr. Lin urges this Court to adopt the reasoning from the federal courts, which have construed 42 U.S.C. § 12203, the ADA's analogous provision. Section 12203(a) provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge,

7

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Dr. Lin cites several federal cases holding disability accommodation requests are protected activity under this provision to support a retaliation claim, and this reasoning should be applied to the MHRA's analogous language.

In *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997), the First Circuit found an employee could bring a retaliation claim based on an accommodation request under section 12203(a), reasoning:

> It is questionable whether [the employee] fits within the literal language of the statute: he filed no charge, nor participated in any investigation. Moreover, he did not literally oppose any act or practice, but simply requested an accommodation, which was given. It would seem anomalous, however, to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge. This would leave employees unprotected if an employer granted the accommodation and shortly thereafter terminated the employee in retaliation. And so, without addressing the issue any further, we will assume *arguendo* that [the employee's] request brings him within the coverage of 42 U.S.C. §12203(a).

The remaining federal circuits eventually adopted this position, despite echoing concerns whether merely requesting an accommodation fell within the literal language of section 12203(a). *See, e.g.*, *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) (citing *Soileau*'s reliance on Congressional intent to provide retaliation protection); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 620 n.9 (5th Cir. 2009) (acknowledging "[t]he parties debate whether requesting an accommodation is a protected activity if the employee is later determined not to have a disability under the ADA" but recognizing "[e]very appeals court to consider this issue has concluded that it is

8

protected ….").  Notably, in *Kirkeberg v. Canadian Pacific Railway*, 619 F.3d 898, 907-08 (8th Cir. 2010), the Eighth Circuit acquiesced in this analysis, stating:

> One might wonder how the theory behind [the employee's] retaliation claim can be squared with the text of the statute.  An employee who asserts a right under 42 U.S.C. § 12112(b)(5)(A) to obtain reasonable accommodation for an alleged disability has not 'opposed any act or practice made unlawful' by the ADA.  Nor has he 'testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under the ADA.  On that basis, it might be thought that [the employee's] claim never gets out of the starting gate.
>
> In *Heisler v. Metropolitan Council*, however, this court held that '[a]n individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA as long as [he] had a good faith belief that [a] requested accommodation was appropriate.'  339 F.3d at 632 (internal quotations and citation omitted).  *Heisler* relied for this proposition on *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183 (3d Cir. 2003), which reasoned that '[t]he right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC,' and that 'it would seem anomalous ... to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge.'  *Id.* at 191 (quoting *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir. 1997)).  Thus, although '[i]t is questionable' whether an employee who merely requests a reasonable accommodation 'is within the literal language of the statute,' *Soileau,* 105 F.3d at 16, we are bound by *Heisler* to conclude that making such a request is protected activity for purposes of 42 U.S.C. § 12203(a).

While this Court recognizes the federal circuits' uniform adoption of a cause of action for merely requesting an accommodation request, this Court is not bound by these cases when the analysis is not consistent with the plain language of section 213.070.1(2).  *Soileau*, *Shellenberger*, and *Kirkeberg* all recognized the request for accommodation does not fall within the literal language of section 12203(a) nor does the request constitute opposition or participation in activities delineated in the statute.  Hence, there was no

9

textual basis in section 12203(a) for the cause of action - only the federal circuits' supposition of Congressional intent.

This Court must construe the plain language enacted by the Missouri legislature. "In construing a statute, courts cannot 'add statutory language where it does not exist'; rather, courts must interpret 'the statutory language as written by the legislature.'" *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 (Mo. banc 2016) (quoting *Frye v. Levy*, 440 S.W.3d 405, 424 (Mo. banc 2014)). The plain language of section 213.070.1(2) prohibits retaliation by an employer when an employee "oppose[s] any practice prohibited by this chapter" or when an employee "file[s] a complaint, testifie[s], assist[s], or participate[s] in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter." Nothing in this language includes a retaliation claim based on a mere request for an accommodation.

Dr. Lin argues her repeated requests for accommodation demonstrate she was "opposing" the University's alleged violation of her MHRA rights. Initially, this Court notes Dr. Lin never pleaded nor asserted below that her repeated accommodation requests constituted "opposition," nor does she cite any case standing for that proposition. Even if this Court could discern a way to construe her requests as "opposition" to an unlawful practice, the record demonstrates each time Dr. Lin requested an accommodation for her herniated discs throughout her University employment, it was provided without the need for medical documentation. When medical documentation was requested and provided in July 2012, the record reflects Dr. Lin's request was honored until she was terminated.

10

This Court does "not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning. The legislature may wish to change the statute .... But this Court, under the guise of discerning legislative intent, cannot rewrite the statute" to provide Dr. Lin a cause of action where one does not exist.[3] *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 327 (Mo. banc 2016) (quoting *State v. Rowe*, 63 S.W.3d 647, 650 (Mo. banc 2002)). Hence, this Court is constrained to find a mere request for an accommodation does not fall within the plain language of either the opposition or participation clause of section 213.070.1(2); therefore, Dr. Lin failed to state a claim for relief.

## Conclusion

The circuit court's judgment is reversed, and the case is remanded.

All concur.

---

[3] Dr. Lin directs this Court to *McCrainey v. Kansas City Missouri School District*, 337 S.W.3d 746 (Mo. App. 2011), to support her claim appellate courts can impose requirements not found in the explicit statutory language of the MHRA. In *McCrainey*, the plaintiff filed a complaint against his employer for using discriminatory language in the workplace against other employees. *Id*. at 750. The appeals court found a plaintiff must demonstrate a "good faith, reasonable belief that the conduct he or she opposed was prohibited by the MHRA in order to prevail on a retaliation claim." *Id*. at 754. *McCrainey* did not create a cause of action where one did not exist previously.

11